**PENNEY et al. v. BOOTH et al.    (No. 7822.)**

(Court of Civil Appeals of Texas. Galveston. Jan. 29, 1920. Rehearing Denied Feb. 12, 1920.)

**1. Deeds ☞38(1)—Description held insufficient.**

Deeds conveying, "All that certain piece, parcel and quantity of land on Dickinson bayou in the county of Galveston and republic aforesaid, containing one hundred and fifty acres, being a part of the original headright of the said John Sellers, * * * and for explanation it is understood that the said land lies at or near the mouth of the said bayou in the county of Galveston and republic of Texas," *held* void, being insufficient to describe a particular tract with the certainty required to pass title.

**2. Deeds ☞38(4)—Deed for given number of acres to be selected out of a larger tract valid.**

A deed for a given number of acres out of a larger tract of land with the right of the purchaser to select its location on the larger tract is valid provided such selection is made by the purchaser.

**3. Deeds ☞38(4)—Deed for a proportionate part of a larger tract valid.**

A deed for a proportionate part of a larger tract without the stipulation therein that the purchaser may select and locate the land conveyed is valid.

Lane, J., dissenting.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Mary Q. Penney and others against Horace Booth and others. Demurrer to plaintiffs' petition sustained, and plaintiffs appeal. Affirmed.

Maco & Minor Stewart, Albert J. De Lange, and Jules Damiani, all of Galveston, for appellants.

Baker, Botts, Parker & Garwood, Rodman S. Cosby, and J. B. Ross, all of Houston, for appellees.

LANE, J. This is an action in trespass to try title and for partition, brought by Mary Q. Penney and other heirs of Hannah Parker, deceased, against Horace Booth and others, to recover an undivided interest of 128.58 acres in a certain 1,000-acre tract described by metes and bounds and as a part of the John Sellers headright survey of one league and labor of land near the mouth of Dickinson bayou in Galveston county, Tex.

The material allegations of plaintiffs' petition are:

That they are the owners of an undivided 128.58 acres of land out of a tract of 1,000 acres known as "Share A" of the west or upper half of a league of land patented to W. T. Austin, assignee of John Sellers, Feb-

ruary 12, 1846, Patent 126, volume 5. That said share A containing 1,000 acres is the same tract that was awarded to William A. Benton in suit of William Benton et al. v. S. G. Ethridge et al., No. 15277, district court of Galveston county, Tex.; said cause being a suit for partition of the west or upper half of said Sellers league among the owners of said west or upper half of said Sellers league. That on January 13, 1842, and prior to issuance of patent, John Sellers and Austin agreed that Sellers would take the upper or west half of the league and Austin would take the lower or east half of the league. That on the 29th day of February, 1840, John Sellers executed a bond for title to William Turner, binding himself to convey to Turner 300 acres to be taken out of the Sellers league. It was stipulated in the bond that said 300 acres was not to be taken from 600 acres at the mouth of Dickinson creek, reserved by Sellers, and that it was to be bounded on any one of the lines of the league and labor. That on the 23d day of March Sellers executed bond for title to C. L. Lewis obligating himself to convey to Lewis 250 acres of land on Dickinson bayou to be selected from any part of said league and labor, except it was not to be taken from the 300 acres sold to Turner or the 600 acres reserved for his own use at the mouth of said bayou; it being specially provided that said 300 acres was not to be taken from the middle of the league and labor, but to be bounded on one side by one of the original lines of the survey.

That on the 3d day of April, 1840, by a deed of that date, John Sellers conveyed to Hannah Parker (under whom appellants claim) 150 acres of land described as follows:

"All that certain piece, parcel and quantity of land on Dickinson bayou in the county of Galveston and republic aforesaid, containing one hundred and fifty acres, being a part of the original headright of the said John Sellers, * * * and for explanation it is understood that the said land lies at or near the mouth of the said bayou in the county of Galveston and republic of Texas."

That after executing the instruments above mentioned Sellers, during the year 1840, executed bonds for title obligating himself to convey to A. J. Cody 250 acres; to Henry Hubbell, 500 acres; to Manning, 200 acres; and to B. B. Wilkins, 300 acres—all to be selected out of and taken from the Sellers headright survey in Galveston county. That on July 27, 1842, John Sellers conveyed to John M. Farrow certain land, reciting in the conveyance that it was an undivided interest of 500 acres in a one-half league of land on Dickinson bayou, same being part of the league and labor of land granted to Sellers of which league and labor he is to give one-half to Wm. T. Austin for procuring

patent, as appears in contract between Sellers and Austin, and further reciting that it is agreed between the parties that Farrow may take any part of Sellers' share to the amount of 500 acres in any place on that part of said land which may not be taken by previous purchasers, and that when the patent shall issue to Sellers and Austin, or either of them, for said land, and the said Farrow shall have designated and surveyed his share, that Sellers will be bound to make a sufficient conveyance for said 500 acres, describing it by metes and bounds. That on the 1st day of August, 1842, John Sellers executed a quitclaim deed to John M. Farrow conveying to Farrow certain property in the following words:

"All my right, title and interest in and to one-half of an undivided league of land, and one-half of one labor (and specified in the annexed instrument of writing), and further do empower the said Farrow, his heirs and assigns, to demand and take possession of the lands and premises as to me granted in the foregoing instrument between William T. Austin and myself, dated July 11, 1842."

Plaintiff further alleging that the total amount of land conveyed as before recited is 2,400 acres.

The plaintiffs further represent that the title to the several tracts sold by Sellers out of the west half of said league passed to and were held by the following named persons on June 4, 1891, viz.:

Tract A, of 300 acres, sold by Sellers to Turner; 100 acres owned by Ridout or his unknown heirs; 133⅓ acres owned by De Forrest; and 66⅔ acres owned by Ethridge.

Tract B, of 250 acres, sold by Sellers to Lewis; held by Susan C. Hartley and Jerean Hartley.

Tract C, of 150 acres, sold by Sellers to Hannah Parker; held by the heirs at law of said Hannah Parker.

Tract D, of 250 acres, sold by Sellers to A. J. Cody; held by Susan C. Hartley and Jerean Hartley.

Tract E, of 500 acres, sold by Sellers to Henry Hubbell; held by William A. Benton, the only grandchild of said Henry Hubbell.

Tract F, of 200 acres, sold by Sellers to Manning; held by unknown heirs of said Manning.

Tract G, of 500 acres, sold by Sellers to John M. Farrow; held by William A. Benton.

Tract H, of 250 acres, sold by Sellers to Wilkins; held by Edward Merkle and T. Schneider.

Tract I, of all interest in said west half sold by Sellers to Farrow, by William A. Benton.

That on said June 4, 1891, suit for partition was had in the district court of Galveston county between all of said last-named parties, except the heirs of Hannah Parker.

That neither Hannah Parker nor her heirs were parties to said partition suit. That in said partition suit partition was had whereby said west half of said league was subdivided into shares A, B, C, D, E, F, and G; share A consisting of 1,000 acres described by metes and bounds, and set apart to William A. Benton.

That in said partition suit no attempt was made to dispose of 150 acres conveyed by Sellers to Hannah Parker. That plaintiffs herein now elect to allow said partition to stand and now here sue those now asserting title to the said 1,000 acres known as share A, which share A embraces and is composed of the 500 acres described in conveyance from Sellers to Farrow, and 500 acres described in bond for title from John Sellers to Henry Hubbell; the said 500 acres conveyed to Farrow being the 500 acres mentioned in subdivision G in paragraph 2 of plaintiffs' petition, and the 500 acres described in the bond for title from Sellers to Hubbell being that mentioned in subdivision E of paragraph 2 of plaintiffs' petition.

That plaintiffs herein are the heirs of Hannah Parker (the facts of heirship being stated).

The land in the Sellers league is alleged to be of like and uniform quality and value.

Plaintiffs pray for recovery of their portions as heirs of Hannah Parker out of said share A.

Defendants filed general demurrer and plea of not guilty.

The trial court sustained the general demurrer to plaintiffs' petition on the grounds that the description in the deed from Sellers to Hannah Parker was void and conveyed nothing, upon the theory that Sellers was intending or attempting by said deed to convey a certain 150-acre tract of land, and that in such case the description in deed must in itself furnish sufficient information to enable one to locate the land sought to be conveyed, or it must refer to some other instrument from which such information can be had, or the deed would convey nothing.

Appellants insist that the court erred in sustaining the general demurrer to this petition, because: (1) It appears from the allegations of their petition that they were the owners of an undivided interest of 128.58 acres of land out of the 1,000 acres described in said petition; (2) because the description of the land sought to be conveyed by Sellers to Hannah Parker is set out in the deed alleged to have been executed; (3) because the deed alleged by the petition to have passed from Sellers to Parker contained a sufficient description of the land sought to be conveyed thereby to effectually vest title in Hannah Parker, under whom plaintiffs claim, to an undivided interest of 128.58 acres in said 1,000-acre tract.

It is apparent from what has been said

that the only question decided by the trial court was, that no title to an undivided interest in the Sellers league passed from John Sellers to Hannah Parker by virtue of the deed under which appellants claim, for the reason that the attempt in such deed to describe the land sought to be conveyed thereby was wholly insufficient to so describe the same, or any land whatever, and therefore said deed conveyed no title to any land but was void and of no effect.

[1] The majority of this court holds that the decision of the trial court is correct and should be sustained.

The majority finds and holds that the description of the land sought to be conveyed by the deed from Sellers to Hannah Parker, to wit:

"All that certain piece, parcel and quantity of land on Dickinson bayou in the county of Galveston and republic aforesaid, containing one hundred and fifty acres, being a part of the original headright of the said John Sellers, * * * and for explanation it is understood that the said land lies at or near the mouth of the said bayou in the county of Galveston and republic of Texas"

—was an attempt to describe a particular tract of land and not an undivided interest, and such being insufficient to describe a particular tract rendered the deed void and of no effect.

[2, 3] This court recognizes the well-established rule that a deed for a given number of acres out of a larger tract of land, with the right of the purchaser to select its location on the larger tract, is valid, provided such selection is made by the purchaser; and also the rule that a deed for a proportionate part of a larger tract, without the stipulations therein that the purchaser may select and locate the land conveyed, is valid. But the majority, as before stated, holds that the deed from Sellers to Hannah Parker is not governed by either of the rules above stated, for the reason that it is not a deed for either a given number of acres out of a larger tract, with the right of the purchaser to select and locate the same, or for an undivided portion of a larger tract, but is a deed for a particular tract which is not described therein with that certainty required to pass title to lands, and therefore should be governed by the rule laid down in the following cases: Davenport v. Chilton, 25 Tex. 519; Pressley v. Testard, 29 Tex. 201; Penn v. Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 842; Patton v. Rucker, 29 Tex. 409; Johnson v. Granger, 51 Tex. 44; Zanderson v. Sullivan, 91 Tex. 503, 44 S. W. 484; Cammack v. Prather, 74 S. W. 355.

The rule laid down in the above cases, relied upon by the majority for support of their conclusions in this case, is aptly stated in the case of Penn v. Yellow Pine Lumber Co., supra, as follows:

"It is well settled that a contract for the sale of land, to be sufficient under the statute of frauds, must describe the land to be conveyed, or must furnish the means by which the land can be identified with reasonable certainty."

As the majority of this court has reached the conclusion that the trial court correctly held that the deed from John Sellers to Hannah Parker conveyed no title to any land on the Sellers league, and for that reason correctly sustained the defendants' general demurrer, and as the only question presented for our determination is as to whether or not the holding of the trial court should be sustained, the judgment of that court is affirmed.

The writer dissents from the conclusions reached by the majority, in that I think that the effect of the deed from Sellers to Hannah Parker was to convey an undivided 150 acres of land out of the John Sellers headright survey in Galveston county, Tex., and that in construing such deed the rule laid down in the following cases should apply: Waterhouse v. Gallup, 178 S. W. 773, at page 776; Mass v. Bromberg, 28 Tex. Civ. App. 145, 66 S. W. 468; Byrn v. Kleas, 15 Tex. Civ. App. 205, 39 S. W. 980; Fontaine v. Bohn, 40 S. W. 637.

In the case of Waterhouse v. Gallup, 178 S. W. 773, Chief Justice Pleasants, speaking for this court, said:

"If a person owning a large tract of land, the location and boundaries of which are known and defined, conveys to another a certain number of acres on or out of such larger tract without further describing or identifying the lands sold, we think the deed should be held to convey an undivided interest in the larger tract proportionate to the acreage conveyed and that contained in the larger tract. If not so construed, nothing would pass by such a deed, and, when a deed or contract is reasonably susceptible of a construction which would make it valid and binding, that construction should be given it rather than one which would render it void."

In Fontaine v. Bohn, supra, it is said:

"It appears to be contended that the description of the land contained in the note (which was the only evidence of what land it was) was too uncertain to admit of a foreclosure, and that the judgment giving practically the same description was erroneous. We believe the law well settled that, in a transaction between individuals, a description such as 80 acres in a certain section will be taken to mean an undivided interest of 80 acres in the survey."

It has been insisted that the use of the words "all that certain piece, parcel and quantity of land," used by Sellers in describing the land conveyed to Hannah Parker, shows that it was intended by the deed to convey a definite and distinct tract. I do not think that any weight should be given to the fact that such words were so used. I think it reasonably appears from the deed,

when read as a whole, that Sellers intended to and in fact did convey to Hannah Parker an undivided interest only in the Sellers survey. I am strengthened in this conclusion by reason of the fact that, in conveying an undivided interest in said survey to one B. B. Wilkins, Sellers described the same as "a certain piece or parcel of land, to wit, 250 acres of land situated on Dickinson creek in Galveston county, etc.," and after so describing the land conveyed he used other words clearly showing that he did not intend by his deed to convey any certain piece, parcel, or distinct tract of land.

For the reasons pointed out, I think the judgment of the trial court should be reversed and remanded.

Affirmed.